KARL F. RAPP, APPELLANT, v. WILSON & COMPANY, INC., APPELLEE.

263 N. W. 2d 832

Filed March 22, 1978. No. 41349.

J. Joseph McQuillan of McQuillan & Swartz, for appellant.

Louis M. Leahy of Leahy, Washburn & Render, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

KUNS, Retired District Judge.

This is an appeal from the District Court for Douglas County, Nebraska. Karl F. Rapp, the appellant, sued Wilson & Company, Inc., the appellee, for wages alleged to have been lost because he was not called for work in accordance with the terms of a union contract between the appellee and the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO. The trial court directed a verdict in favor of appellee and dismissed appellant's action. We affirm the judgment of the trial court.

The appellant, a member of said union, was, at all times material to this case, a full-time employee of the Union Pacific Railroad Company. Both parties refer us to the following provisions of the union contract:

### Article XXI--Seniority

21.11, page 25. "An Extra Board, consisting of employees present and registered in the employment office as hereinafter specified, will be utilized to meet employment needs. Available jobs will be offered to Extra Board employees, provided such jobs do not require a special skill, and further provided the employee can perform the job or learn it in a reasonable length of time, in the following sequence:

"(i) Open jobs in departments where no employees with seniority are laid off.

"(ii) Regular replacement jobs.

"(iii) Temporary openings.

"(iv) Part time and casual work.

"Open jobs in departments where no employees with seniority are laid off, regular replacement jobs and part time and casual work will be offered to Ex-

tra Board employees in accordance with their continuous service.

"Temporary openings and/or temporary replacement work will be offered in the following manner: * * *

"(3) The Company will recognize continuous service for those employees who desire to be called in for employment later in the day by calling the telephone number which that employee has registered that day at the Employment Office."

21.13 (A) page 26. "All employees in the Extra Board who have not been assigned work, except those who are working on the second shift or the night shift, who desire to work must report to the Employment Office each morning and be registered for work by 7 a.m., or in accordance with local practice."

21.15 (A) page 27. "New employees being hired for the first time in the Extra Board, after having worked thirty (30) days in a period of seventy-five (75) consecutive calendar days, will establish a service date in the Extra Board group dating back to the original date of hire for that period. * * *"

21.15 (E) page 27. "Employees who work as either regular replacements or temporary replacements in their own department shall have their seniority protected for a two (2) year period from the last day worked in their own department."

Appellant registered for work at the employment office of appellee previous to October 9, 1970. He stated that he was hired as a "spot worker," to perform casual labor, and described his work in this way: "Well, we unloaded trucks, unloaded the sawdust, worked in the hide cellar, killing floor, fill in on cleaning jobs when the regular boys didn't show up on cleanup, worked sweet pickle and bacon, pressing bacon and cleaning bacon. I would say a general laborer." He further stated that he worked in many departments and did anything that came up. Appel-

lant and three others doing the same work testified that when there was work for them, they were called in rotation according to their dates of first employment by Ed Skorka, a night superintendent; and not all such workers belonged to the union. They were only called for night work, the calls being placed between 5:30 and 6 p.m., on the days when they were needed.

The evidence does not show that appellant was ever specifically designated as an extra board employee or that he was ever called for anything except part-time and casual work. There is no showing that a date of seniority was ever established by working 30 days in a period of 75 consecutive calendar days, according to Art. XXI (A), quoted above; neither did appellant work in one department so that he might have seniority protected under Art. XXI (E), quoted above. The basis for the order of calling the members of the crew of which appellant was a part was not the union contract; both members of the union and nonmembers were treated alike and they were called in the order of the date of the commencement of their most recent employment. Appellant was not given priority according to his previous term of employment.

The terms of the union contract are not ambiguous. The conduct of the parties was consistent with a construction of the contract that appellant was not an extra board employee. The burden rested upon the appellant (1) to bring himself within the definition of such employment, and (2) to show that appellee breached one or more provisions of the contract. The evidence is entirely insufficient to require submission of either of these issues. The orders of the trial court were correct and are affirmed.

AFFIRMED.